## WILLIAMS *vs.* THE STATE OF GEORGIA.

1. A witness having been offered by the state in a bigamy case, and objected to by the defense on the ground that she was the first wife of the defendant, it was not error to rule that this fact must be made to appear to the court, and that so soon as it should appear the testimony of the witness would be rejected.

2. The act of 1866 (Code, §1667,) was intended to put an end to the living in concubinage of persons of color, and to establish those marital relations between them which their freedom permitted and morality and law required. Therefore, if they continued to live as man and wife on the 9th of March, 1866, by virtue of that act they became so without any formal ceremony.

3. The courts will take cognizance of a public event like Sherman's march to the sea, and the time when it occurred.

(*a.*) If, however, it was material to prove this, there was no error in re-opening the case and allowing the solicitor general, as a witness, to state the time of such occurrence.

4. Newly discovered testimony of a witness who is incompetent to testify at all cannot be a ground for new trial.

(*a.*) To make newly discovered evidence a ground for new trial, it must appear that the movant did not know of it at the time of the trial, and that his ignorance was not the result of negligence.

5. The evidence supports the verdict.

Criminal Law. Practice in the Superior Court. Witness. Evidence. Husband and Wife. Before Judge FLEMING. Chatham Superior Court. March Term, 1881.

Williams was indicted for bigamy. Elizabeth Williams was the prosecutrix. On the trial she was offered as a witness, and defendant objected to her. The solicitor-general admitted that she was the person alluded to in the indictment as the lawful wife of the defendant. His counsel objected to her being sworn. The court allowed her to be sworn, and asked whether she was living with the defendant as man and wife on March 9th, 1866; and on receiving an affirmative reply, ruled out the answer and held her incompetent.

Defendant's counsel requested the judge to charge the

jury that if they found from the evidence that the parties were living together in a state of concubinage only, the act of 1866 did not marry them. The judge declined so to charge, but in lieu thereof charged the jury that the act of 1866 did marry them.

There was no controversy as to the fact that the defendant and prosecutrix were slaves; that they had lived together before the late war; that they had been separated and sold to different owners during the war; that after its close they again lived together; that she associated immorally with another, and that defendant quit her and married another woman; but the point of conflict was whether the second cohabitation began prior to the operation of the act of 1866. One witness swore that it began about two months after the Federal forces occupied Savannah. The state closed its case, and the defendant asked the court to direct a verdict of not guilty. This was refused, and on motion the solicitor general was allowed to testify that the army of General Sherman came to Savannah December 21st, 1864.

The jury found defendant guilty. He moved for a new trial, alleging error in each of the rulings above stated, that the verdict was contrary to law and evidence, and because of newly discovered evidence. This consisted in a statement by the prosecutrix that since the trial she had refreshed her recollection, and was not sure that the second cohabitation began before March 9th, 1866, and the testimony of two witnesses to the effect that the defendant had no wife on that date.

The motion was overruled, and defendant excepted.

J. LAWTON WHATLEY; L. H. DE MONTMOLLIN, by brief, for plaintiff in error.

W. W. McCALL, solicitor general *pro tem.*, by brief, for the state.

JACKSON, Chief Justice.

We see no error in the denial of the motion for a new trial.

1. The court did not err in ruling that if it turned out from her testimony that Betsy Williams was the first wife of the defendant, that then her testimony would be ruled out, there being no evidence that she was his wife offered by the defendant when objection was made to her. To the very first question asked her she replied that they did live together as man and wife, and instantly the court ruled that answer out, and she left the stand.

2. There was no error in the refusal to charge that if the defendant and Betsy lived in a state of concubinage only, then the act of 1866 did not marry them, and in saying to the jury on the contrary that if they so lived on the 9th of March, 1866, then that act did marry them. The very object of the act was to declare all people, who had been slaves, and were then living as man and wife, but without any legal ceremony of marriage, really and to all intents and purposes as fully husband and wife as though they had been formally married. The evil was that as slaves they lived in concubinage, not being capable of contracting marriage, and the remedy was by that act, that if they so continued to live on the 9th of March, 1866, being then free, such living together by them at that time should amount to the contract of marriage in the eye of the law. And thus it was made just as effectually the contract of marriage by them as if they had been always free and had been legally married.

3. Such a great public event as Sherman's march to the sea, and the time it occurred, would be judicially taken cognizance of without proof, 44 *Ga.*, 302 ; but be that as it may, there was no error in allowing a witness to testify to the time, and to re-open the case for that single purpose, and the solicitor general was a competent witness.

4. Elizabeth or Betsy Williams having been ruled incompetent as a witness before the jury, it is not easy to see how any affidavit of hers could affect the case, and the court did not err in denying a new trial on account of her deposition as newly discovered testimony. The other depositions of two witnesses were not deemed sufficient to authorize the grant by the presiding judge, and we cannot see such error in his ruling as will enable us to grant a new trial in opposition to his views. The defendant makes no affidavit that he did not know of the testimony before the trial, and that fact alone is enough to justify the judge in overruling this ground in the motion.

5. The evidence is abundant to show that the defendant lived with the woman as his wife for years before the war, and afterwards both before and after the 9th of March, 1866; and the verdict we think is right. His wife was unfaithful; he got mad and married again without a divorce. Being a free citizen, he must act as one, carrying the burdens, if he so considers them, as well as enjoying the privileges of his new condition.

The jury recommended him to *extreme* mercy, and the judge heeded that recommendation, and made the punishment very light for the crime. This action must stand, unless the pardoning power of the state should see fit to interpose. 40 *Ga.*, 244.

Cited for plaintiff in error: 17 *Ga.*, 364; 34 *Ib.*, 379; 40 *Ib.*, 244; 15 *Ib.*, 550; 54 *Ib.*, 643; 2 Bouvier's Law Dic., p. 98.

For the state: Code, §§1667, 3751; 44 *Ga.*, 302.

Judgment affirmed.